**Dated: October 19, 2006**
**The following is ORDERED:**



Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

**BOBBY DALE GREEN and**                    Case No. 05-74634
**VICKI LYNNE GREEN,**                      Chapter 7

         Debtors.

**ARVEST BANK, STILLWELL, OK**

         Plaintiff,

vs.                                                            Adv. No. 05-8129

**BOBBY DALE GREEN and**
**VICKI LYNNE GREEN,**

         Defendants.

**O R D E R**

On the 20th day of September, 2006, the above referenced adversary proceeding came on for trial. Counsel appearing were Lloyd Cole and Ray Green for Plaintiff, and Teddy Abbott for Defendants. After hearing arguments of counsel, the Court does hereby enter the following findings

EOD 10/19/06 by cc

and conclusions in conformity with Rule 7052 Fed. R. Bankr. P., in this core proceeding.

FINDINGS OF FACT

The parties stipulated to much of the evidence presented to the Court. Defendants obtained several loans from the Plaintiff with the assistance of their nephew, Woody Eubanks, who was a loan officer with Plaintiff. Defendant Bobby Green testified that he is a high school graduate with additional vocational-technical training. He was formerly employed in the maintenance department of Schwan's Foods, and left when he purchased a convenience store in 2003. In 2001 or 2002, Mr. Green obtained several loans from Plaintiff to purchase cattle. Defendants were unable to make the payments on that loan. Mr. Eubanks suggested they refinance the debt through the Plaintiff and the Farm Service Agency ("FSA") at a lower rate of interest. He prepared the documents necessary to obtain the refinancing. These documents consisted of an "Application for Guarantee" to be submitted to the FSA to obtain guarantees for two loans from Plaintiff to refinance existing farm debt, a "Farm and Home Plan," a "Loan Agreement," and a "Loan Narrative."

One of the loans was for $100,000 and the other loan was for $129,000. The documents listed cattle, farm equipment and real estate as security. The real estate included two tracts: (1) eighty acres valued at $80,000; and (2) twenty acres valued at $20,000.[1] No prior liens had been placed on these tracts. The Defendants admitted that they signed these documents even though they never owned the two tracts of real estate listed. Defendants stated that they did not read the documents before signing. Both Mr. and Mrs. Green testified that they were given the opportunity to review the documents before signing, that they did not remember reading them, and that they trusted that Mr. Eubanks had properly prepared the paperwork. Mrs. Green testified that she

---

[1]The Loan Agreement and Loan Narrative only list the eighty acre tract of real estate.

2

Case 05-08129   Doc 44   Filed 10/19/06   Entered 10/19/06 14:33:19   Desc Main
Document      Page 2 of 12

understood the documents she signed. Mr. Green stated that Mr. Eubanks knew that the Defendants did not own the real estate listed on the documents. He also stated that in August of 2005, he made it known to Plaintiff that he and his wife did not own the 100 acres of real estate.

Angie McReynolds, a former employee of the Plaintiff, testified regarding the loan application documents. She signed the "Application for Guarantee" on behalf of the Plaintiff. Ms. McReynolds testified that she worked for Plaintiff in its Siloam Springs, Arkansas office at the time the Defendants applied for refinancing and FSA guarantees. She remembered the Greens' loan because it was one of the first FSA packages she prepared. She compiled information required to obtain the FSA guarantees, and reviewed previous loan documents from the Greens, as well as correspondence from Mr. Eubanks. Ms. McReynolds stated that she personally called Mr. Green because she was having difficulty getting information from Mr. Eubanks. She said that Mr. Green verified the information regarding collateral, including the number of cattle he owned, and the two tracts of real estate. Mr. Green, however, did not recall this phone conversation nor any other phone call from any of Plaintiff's employees.

Ms. McReynolds further testified that she did not verify the legal descriptions of the pledged real estate nor were they included in the information she submitted to the FSA because the agency did not require them. However, she did see legal descriptions of the real property in the bank's file regarding the Defendants' loans. Ms. McReynolds also inspected the cattle with Mr. Eubanks to verify the number, and was told by Mr. Eubanks that the cattle were located on the twenty acre tract purportedly owned by the Defendants. Some time after the loans and guarantees were approved, Ms. McReynolds noticed that the original loans to Defendants had not been submitted through the Plaintiff's usual procedures for appraisal of property and title verification. She discovered that the

3

Defendants did not own the 100 acres listed on their loan documents, and notified a bank official. In June of 2004, Mr. Green provided an "Agricultural Financial Statement" to Plaintiff and again listed assets consisting of an eighty acre tract of real estate as well as two other tracts.

The Defendants did own the cattle that were pledged as security for the refinancing and loan guarantees. The Loan Agreement contained a specific prohibition against selling or transferring assets without consent of the Plaintiff. Ms. McReynolds sent a letter to the Defendants in July of 2004 reminding them of this restriction, advising them that any proceeds from the sale of cattle must be applied to the loans, and requesting proper documentation of any sales. Mr. Green testified that he was not told about this restriction when Ms. McReynolds personally inspected his cattle herd. However, he admitted that he violated this agreement by selling livestock in his daughter's name on several different occasions, then using the proceeds (made payable to his daughter) to pay a debt to a hay supplier and to pay an annual loan payment due to Plaintiff on a separate cattle loan. He explained that he purposely concealed these sales from the Plaintiff in fear that any monies he paid to it would be applied to another debt he owed to Plaintiff rather than the original loans. He also stated that he informed Mr. Eubanks about some of the cattle sales. Defendants stipulated that they sold livestock in the name of a third person and converted the proceeds to their own benefit without the approval or knowledge of Plaintiff. They also stipulated that they sold livestock during their Chapter 7 bankruptcy, converted the proceeds to their own use to pay an unsecured creditor, and did so without the knowledge or permission of the Plaintiff or the bankruptcy trustee.

Defendants also testified regarding other business transactions with the Plaintiff. Mr. Green decided to purchase a convenience store in Stillwell, Oklahoma, in November of 2003 for $520,000, even though he had no experience in that business, did not investigate the financial position of the

4

store, and relied on Mr. Eubanks' review of the store's financial statements. Plaintiff held the mortgage on the store so Defendants assumed that mortgage and agreed to make a down payment to the seller. Mr. Eubanks gave Mr. Green a $40,000 cashier's check to use as a down payment for the store. In addition, Mr. Eubanks transferred $15,000 into the Defendants' checking account for operating expenses for the store. The Greens did not sign any loan documents before receiving this money. They did not ask Mr. Eubanks any questions regarding the origin of the $55,000. Mrs. Green testified that she thought this money was a personal loan from Mr. Eubanks, not money loaned by Plaintiff. Mr. Green testified that he did not know where the money came from, but assumed he would have to repay it to someone. Approximately one year later, Mr. Green discovered the existence of a loan from Plaintiff in his son's name, even though his son was not a customer of Plaintiff, never requested the loan, nor signed any loan documents. Defendants determined that this loan actually represented the monies they received from Mr. Eubanks for the purchase of the convenience store. They withdrew funds from a retirement account to pay off this loan. The convenience store has since been relinquished to the current mortgage holder.

  The Defendants also received other funds from Plaintiff to operate their store. In February of 2004, they owed $36,000 to their gasoline supplier. Shortly after Mr. Green mentioned this debt to Mr. Eubanks, $36,000 was transferred into their checking account. Those funds were later traced to a loan by Plaintiff to David Leatherwood, an individual unrelated to the Greens, the proceeds of which were used to purchase a cashier's check payable to Bobby Green. Mr. Eubanks arranged for the transfer of this money into the Defendants' bank account. Once the money was in his account, Mr. Green wrote a check to pay for his gasoline bill. Mr. Leatherwood submitted an affidavit stating that he had never borrowed nor received this $36,000, but believed that this particular loan

5

document had been submitted to him for his signature along with other documents he signed to obtain other valid loans. Plaintiff offset funds from the Defendants' bank accounts to pay on this loan.

Mr. Roger Holroyd, executive vice-president and senior loan manager for Plaintiff, also testified regarding the Defendants' banking transactions. He stated that the Defendants' refinancing resulted in them obtaining "new" money beyond simply refinancing their old loans. Bank officials had difficulty in verifying information with Mr. Green regarding the number of cattle owned. Plaintiff inspected the cattle herd in the summer of 2004, and discovered a discrepancy between the number of cattle listed on loan documents and financial statements provided by Defendants and the actual number of cattle. Mr. Holroyd directed Ms. McReynolds to send the letter, dated July 13, 2004, to the Defendants reminding them of the terms of their FSA-backed loans requiring Plaintiff's permission prior to the sale of any cattle. In 2005, Plaintiff filed a replevin action against Defendants in Adair County District Court, State of Oklahoma. That court ordered Defendants not to dispose of any livestock, personal property or real estate pledged to Plaintiff. In spite of this order, Defendants sold calves without Plaintiff's knowledge or permission, and failed to account to Plaintiff for the proceeds of those sales. Mr. Holroyd furnished the Court with the current balances on Defendants' loans: $106,688.90 on one FSA loan, $14,163.37 on the second FSA loan, and $36,724.82 on the loan representing monies fraudulently obtained in the name of David Leatherwood. Mr. Holroyd stated that Defendants also owe Plaintiff approximately $10,000 in unaccounted for proceeds from the unauthorized sale of cattle. Defendants have paid off another loan they had with Plaintiff.

## CONCLUSIONS OF LAW

6

The issue of nondischargeability is a matter of federal law governed by the terms of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 284, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). The creditor has the burden to establish by a preponderance of the evidence that the debt is nondischargeable. *Id* at 291. Specifically, Plaintiff argues that the debt of Defendants/Debtors Bobby Green and Vicki Green is nondischargeable pursuant to 11 U.S.C. § 523 which states in relevant part:

> (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -
> ***
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
> ***
> (B) use of a statement in writing -
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). Exceptions to discharge are narrowly construed and doubts are resolved in the debtor's favor. *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar),* 125 F.3d 1358, 1361 (10th Cir. 1997).

Several documents concerning their financial condition were signed by the Defendants in connection with refinancing their loan. Defendants were given the opportunity to review every document in connection with their loans. Many of the financial documents contain false claims of ownership of real property, and are materially false statements under § 523(a)(2)(B), as they "paint[] a substantially untruthful picture of a financial condition by misrepresenting information of the type

7

which would normally affect the decision to grant credit." *In re Bailey,* 145 B.R. 919, 930 (Bankr. N.D. Ill. 1992).

Under § 523(a)(2)(B), the statement must be with respect to the debtor's financial condition, or the financial condition of an insider. The Tenth Circuit has adopted a strict interpretation of the phrase "respecting the debtor's . . . financial condition." *Cadwell v. Joelson (In re Joelson),* 427 F.3d 700, 714 (10th Cir. 2005). The *Joelson* court held that statements respecting the debtor's financial condition are:

> [T]hose that purport to present a picture of the debtor's overall financial health. Statements that present a picture of a debtor's overall financial health include those analogous to balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor or insider's net worth, overall financial health, or equation of assets and liabilities.

*Id.* The Farm and Home Plan document signed by the Defendants on July 9, 2003, contains a balance sheet with assets and liabilities listed. The eighty acre and twenty acre tract are included on the balance sheet, and their inclusion raises the total farm assets value above total farm liabilities. Other documents involved in the refinancing transaction indicated the ownership of the eighty acre and twenty acre tracts in depicting the Defendants' financial condition. These materially false statements depicted an overall bright picture of the Defendants' financial health.

Next, the Plaintiff must show "reliance in fact, i.e., that it actually relied on the financial information, and that such reliance was reasonable." *First Nat'l Bank v. Cribbs (In re Cribbs)*, 327 B.R. 668, 674 (10th Cir. BAP 2005). Actual reliance may be proven by circumstantial evidence, as it may be difficult to prove directly. *Id.* Mr. Eubanks prepared several documents for the Defendants, and Mr. Green testified that Mr. Eubanks knew that Defendants did not own the eighty and twenty acre tracts. However, Ms. McReynolds prepared the FSA packaging and compiled the

8

necessary information from Defendant's loan documents and correspondence from Mr. Eubanks. When conflicting information and difficulties arose, Ms. McReynolds testified that she verified the collateral information with Mr. Green over the telephone, including the real estate. This indicates a reliance on the information contained in the documents. Ms. McReynolds did not verify the legal descriptions since they were not required by the FSA, however she did recall seeing legal descriptions in the Plaintiff's file. Further, Ms. McReynolds was informed during a cattle inspection that the acreage the cattle were located on was the twenty acre tract. This Court finds Ms. McReynold's testimony to be credible. This Court finds that the Plaintiff did in fact rely on the information contained in the financial documents signed by the Defendants, and that its reliance was reasonable.

The final element of § 523(a)(2)(B) is that the debtor must have caused the statement to be made or published with the intent to deceive. The requisite intent to deceive may be inferred when the other elements under § 523(a)(2)(B) are met. *See Driggs v. Black (In re Black),* 787 F.2d 503, 505-506 (10th Cir. 1986) ("requisite intent may be inferred from a sufficiently reckless disregard of the accuracy of the facts"), *abrogated on other grounds, Grogan v. Garner,* 498 U.S. 279 (1991). In this case, Defendants actions exhibited not only a reckless disregard of the accuracy of the facts, but Mr. Green's verification of the ownership of certain tracts to Ms. McReynolds over the telephone indicate an intent to deceive at the time the financial statements were signed. This Court finds that the final element has been established.

As a result, this Court finds that the debt owed by the Defendants to the Plaintiff in connection with the FSA loans should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(B).

9

Next, this Court will examine whether the $36,000 transfer should be excepted from discharge. Mr. Green stated that after mentioning the debt owed to a gasoline supplier, $36,000 was transferred into Defendants' checking account. Mr. Eubanks arranged the transfer. There is no evidence that Defendants made any written or oral representations in connection with this transfer other than telling Mr. Eubanks about the $36,000 owed to a gasoline supplier. This is not enough to support a finding of non-dischargeability under 11 U.S.C. § 523. Therefore, this Court finds that the debt owed by the Defendants to the Plaintiff in connection with the $36,000 transfer is dischargeable.

Plaintiff also objects to the Defendants' discharge under 11 U.S.C. § 727. Section 727 (a)(2) provides as follows:

> (a) The court shall grant the debtor a discharge, unless -
> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed -
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> > (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727 (a)(2)(A) & (B). The burden of proof is on the Plaintiff to prove denial of the Defendants' discharge by a preponderance of the evidence. Fed. R. Bankr. P. 4005; *see Grogan,* 498 U.S. 279. The provisions denying discharge "must be construed liberally in favor of the debtor and strictly against the creditor." *Gullickson v. Brown (In re Brown),* 108 F.3d 1290, 1292 (10th Cir. 1997).

Defendants stipulated that they sold livestock in the name of their daughter without Plaintiff's permission, and also sold livestock during their bankruptcy without the permission of the

Trustee or the Plaintiff. This Court must determine whether Defendants transferred the livestock with the intent to hinder, delay, or defraud a creditor.

Plaintiff must demonstrate actual fraudulent intent; the intent to defraud cannot be constructive. *Village of San Jose v. McWilliams,* 284 F.3d 785, 790 (7th Cir. 2002). Fraudulent intent may be inferred by circumstantial evidence or from the debtor's course of conduct. *See Farmer's Co-op Ass'n v. Strunk,* 671 F.2d 391, 395 (10th Cir. 1982) (citation omitted). Courts have looked to certain "badges of fraud" that may indicate fraud; the Court of Appeals for the Second Circuit has provided the following list of "badges of fraud":

> (1) the lack or inadequacy of consideration
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of the events and transactions under inquiry.

*Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582-83 (2d Cir. 1983). The court in *Kaiser* noted other circumstances from which courts have inferred intent to defraud, which are: concealment of facts and false pretenses by the debtor, reservation of rights in the transferred property, secreting the proceeds of the transfer after receipt, unconscionable discrepancy between value and consideration, and the creation by an oppressed debtor of a closely-held corporation to receive the transfer of property. *Id.* at 1582.

The Court of Appeals for the Ninth Circuit has listed the "badges of fraud" as follows:

> (1) a close relationship between the transferor and the transferee;
> (2) that the transfer was in anticipation of a pending suit;
> (3) that the transferor debtor was insolvent or in poor financial condition at the time;
> (4) that all or substantially all of the debtor's property was transferred;

11

(5) that the transfer so completely depleted the debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and
(6) that the debtor received inadequate consideration for the transfer.

*Emmett Valley Assocs v. Woodfield (In re Woodfield),* 978 F.2d 516, 518 (9th Cir. 1992).

In examining the "badges of fraud" and the facts in the present case, this Court cannot find that the Defendants acted with the intent to hinder, delay or defraud creditors. No evidence was presented that indicated the Defendants transferred the livestock for little or no consideration, nor was there evidence that the transfers were made to a family member or close friend or a corporation created by the Defendants. There was no evidence that Defendants retained any interest or benefit in the cattle following the transfers. Although Defendants did sell some livestock in the name of their daughter, they explained that they wanted to ensure the proceeds from the sale went towards a cattle loan, not the $36,000 debt. Defendants used the funds to pay their creditors, including the Plaintiff. Further, Mr. Green testified that he informed Mr. Eubanks of cattle sales. This Court finds that Defendants did not intend to hinder, delay or defraud their creditors in the transfers of livestock.

IT IS THEREFORE ORDERED that judgment is entered for Plaintiff against the Defendant in that the debt owed by the Defendants to the Plaintiff in connection with the FSA loans is **nondischargeable.**

IT IS FURTHER ORDERED that judgment is entered for Defendants against the Plaintiff in that the debt owed by the Defendants to the Plaintiff in connection with the $36,000 transfer is **dischargeable**.

IT IS FURTHER ORDERED that judgment is entered for Defendants against the Plaintiff in that the Debtors/Defendants' discharge is **granted.**

###